<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| C.P., o/b/o minor child, D.V.W.<br><br>    Plaintiff,<br><br>v.<br><br>FAIR LAWN BOARD OF EDUCATION,<br><br>    Defendant. | Civil Action No. 12-cv-05694<br><br>(SDW) (MCA)<br><br>**OPINION**<br><br>May 1, 2014 |

**WIGENTON**, District Judge.

Before this Court are Plaintiff C.P.'s ("Plaintiff") Motion for Summary Judgment and Motion to Supplement the Record on Appeal. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(2)(A). Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** Plaintiff's Summary Judgment Motion and also **DENIES** Plaintiff's Motion to Supplement the Record.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff seeks judicial review of an administrative law judge's ("ALJ") determination that Defendant Fair Lawn Board of Education (the "Board" or "Fair Lawn") offered her learning disabled child, D.V.W., a free and appropriate education ("FAPE") in compliance with the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. The ALJ thus decided that

Plaintiff is not entitled to reimbursement for the monies she expended paying for D.V.W. to attend private school after Plaintiff removed him from Fairlawn Public Schools ("the District").

Plaintiff and D.V.W. reside in Fair Lawn, NJ. (Pl.'s Br. 3[1].) D.V.W. has been diagnosed with Attention Deficit Hyperactivity Disorder and language-based learning disabilities. (*Id*.) D.V.W. began his academic career in private school at the Academy of Our Lady in Glen Rock, NJ. (*Id*.) At that time he was classified by the Bergen County Special Services as having a learning disability under the category of "Specific Learning Disability." (*Id*.) He thereafter transferred to the District in second grade after Plaintiff was advised that D.V.W.'s academic difficulties could be more appropriately addressed in a public school setting. (*C.P. o/b/o D.V. v. Fairlawn Board of Education*, No. 2012 17681, at *2 (2012) (hereinafter, "ALJ Decision"). D.V.W. was initially enrolled in a mainstream class and also received supplementary instruction in the resource center; however, this arrangement was inappropriate to facilitate his learning. (*Id*. at *2-*3.) Thus, for grades three through five, D.V.W. was placed in a self-contained class for students with language-based learning disabilities. (*Id*. at *3; Pl.'s Br. 4.)

During his fifth grade year, the District's Child Study Team ("CST") changed D.V.W.'s classification to the category of "Other Health Impaired." (Pl.'s Br. 3.) This reclassification, however, did not appear to have a material impact on the educational services that D.V.W. received. (*Id*.) After fifth grade, D.V.W. transitioned into a District middle school for his sixth grade year, wherein he was enrolled in a language-based learning disabilities class for language arts, reading, and math. (ALJ Decision at *3.) He was also enrolled in mainstream classes with in-class support for social studies and science. (*Id*.)

---

[1] Plaintiff submitted a statement of facts in prose form in her moving brief instead of separately numbered paragraphs as required by L. Civ. R. 56.1. Therefore, citations for facts are to the page number of Plaintiff's brief where the facts appear, unless otherwise indicated.

2

At the due process hearing before the ALJ to determine whether D.V.W. was offered a FAPE in the District, Plaintiff testified that the sixth grade was particularly hard for D.V.W. as he was falling further behind his peers and became the target of bullying. (Pl.'s Br. 5.) During this school year, Plaintiff discontinued the use of tutors she had hired to assist D.V.W. so the District could learn how he was functioning without any additional help. (*Id.* at 3.) Plaintiff maintains that her concerns about D.V.W.'s lack of progress and bullying were not adequately addressed by the District. (*Id.*) Plaintiff recounted an instance, which she believes vividly illustrates how the District failed her child, wherein D.V.W. got lost riding his bicycle and was unable to read the street signs to advise her where he was. (*Id.*) Plaintiff thus concluded that the District could not provide D.V.W. with a FAPE and she requested an alternative placement, which was denied. (*Id.*)

Plaintiff thereafter retained Dr. James Battaglia, a psychologist, who, after interviewing and testing D.V.W., opined that D.V.W. had not received a FAPE in the District. (*Id.* at 6.) Dr. Battaglia noted that a comparison of D.V.W.'s scores on previous standardized tests indicated that he had regressed while enrolled in the District. (*Id.* at 6; ALJ Decision at *5.) Plaintiff thus unilaterally enrolled D.V.W. in the Banyan School ("Banyan"), a state approved private school that provides educational instruction to students with learning disabilities. (Pl.'s Br. 6; ALJ Decision at *12.)

The Board's witnesses told a much different tale at the due process hearing. Nancy Herman ("Herman"), D.V.W.'s sixth grade language arts teacher, testified that D.V.W. progressed while in her class. (ALJ Decision at *4.) She testified that she undertook steps to accommodate D.V.W., such as delivering material to him in a multi-sensory manner. (*Id.*) She maintained that information was distilled to "chunks" to make it easier for him to comprehend. (*Id.*) She was emphatic that he was successful in her classroom. (*Id.*) D.V.W.' sixth grade principal, Natalie

Lacatena ("Lacatena"), also testified for the Board. (*Id*. at *3.) She stated that when she observed D.V.W. in class and in the hallways, he appeared engaged with his peers and was socially integrated. (*Id*. at *9.) Jacqueline Freedman, D.V.W.'s case manager, is a school psychologist and also testified on the Board's behalf. (*Id*. at *3.) She explained that D.V.W. was one of the more popular students and was well liked. (*Id*. at *9.) She observed him to be very engaged in class and was pleased with his adjustment to the classroom environment. (*Id*.) Both Freedman and Lacatena testified that D.V.W.'s sixth grade program was appropriate and that he made meaningful progress during that school year. (*Id*.)

Plaintiff and District personnel met on June 6, 2011 to discuss the individualized education program ("IEP") the District proposed for D.V.W.'s seventh grade year. (*Id*. at *10.) The District personnel at the meeting recommended that D.V.W. continue in a similar program for the seventh grade that he had had in sixth grade. (*Id*. at *11.) Freedman explained that the proposed IEP was appropriate for his needs and was designed to offer him meaningful educational benefits. (*Id*.) Plaintiff was concerned about D.V.W.'s progress under the proposed IEP and inquired whether he could be better served in an out-of-district placement. (*Id*.) The CST rejected the suggestion that an out-of-district placement was necessary, and noted that D.V.W. had made appropriate progress during his sixth grade year. (*Id*.) Unsatisfied with the proposed IEP, Plaintiff enrolled D.V.W. in Banyan. (*Id*. at *11.)

Pursuant to the IDEA, Plaintiff filed a petition with the Office of Special Education Programs on August 30, 2011. (Pl.'s Br. 3.) Mediation was unsuccessful and a full due process hearing was held over nine days before an ALJ from January through June, 2012. The ALJ rendered a decision on August 21, 2012, finding that the IEP proposed for D.V.W.'s seventh grade year offered him a FAPE. As such, the ALJ concluded that Plaintiff was not entitled to

4

reimbursement for the funds she expended sending D.V.W. to Banyan. The instant litigation ensued.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather should determine whether there is a genuine issue as to a material fact. *See Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it]

Case 2:12-cv-05694-SDW-SCM   Document 34   Filed 05/01/14   Page 6 of 12 PageID: 453

has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

### III.  DISCUSSION

#### A.  Plaintiff's Summary Judgment Motion

Pursuant to 20 U.S.C. § 1415(i)(2)(C)(i)-(iii), when a party appeals a state administrative decision under the IDEA, the reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415 (2005). When reviewing a state administrative decision under the IDEA, district courts apply "a modified version of *de novo* review." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). The reviewing courts "must give 'due weight' and deference to the findings in the administrative proceedings." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). "Factual findings are considered *prima facie* correct, and if the reviewing court does not adhere to them, it must explain why." *Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1064 (D.N.J. 2011) (citing *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d at 564.

"When an Administrative Law Judge ("ALJ") has heard live testimony and made credibility determinations, his findings are given 'special weight,' and the Court must accept them unless extrinsic evidence in the record justifies a contrary conclusion." *Moorestown Twp. Bd. of Educ.*, 811 F. Supp. 2d at 1064. A district court should provide some analysis and reasons for a departure from an agency's ruling. *See Carlisle Area Sch. v. Scott P. By & Through Bess P.*, 62 F.3d 520, 527 (3d Cir. 1995).

In the instant case, Plaintiff argues that the ALJ erred in determining that D.V.W. received a FAPE while enrolled in the District. (Pl.'s Br. 13-33.) The IDEA requires that states receiving

6

federal education funding provide disabled students with a FAPE. 20 U.S.C. § 1412(a)(1). School districts can give a FAPE to disabled students by designing and administering individualized instructions that are memorialized in IEPs. 20 U.S.C. § 1414(d). The IEP need not "maximize the potential" of the disabled student. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 197 (1982). Instead, all that is required to provide a disabled student with a FAPE is an IEP that is "'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's 'intellectual potential.'" *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004) (quoting *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 181 (3d Cir. 1988)). Furthermore, there is a statutory preference for educating children in the "least restrictive environment." 20 U.S.C.A. § 1412(a)(5); *See T.R. v. Kingwood Tp. Bd. of Educ.*, 205 F.3d 572, 578 (3d Cir. 2000). Such an environment is one that, to the greatest extent possible, educates children with disabilities together with children without disabilities. *Carlisle Area School*, 62 F.3d at 535.

Plaintiff argues that the District-developed IEP for D.V.W.'s seventh grade academic year was inadequate to "allow him to make meaningful education progress." (Pl.'s Br. 14.) She maintains that under the IEP proposed for D.V.W.'s seventh grade year, "[h]e would not have made meaningful educational progress, but instead he was provided more and more bypass strategies, coached as accommodations, which kept him more dependent on other people, and did not give him the ability to see himself making meaningful educational progress." (*Id*. at 15.) Plaintiff contends that the goals outlined in the IEP were unreasonable, unmeasurable, and not calculated to ensure D.V.W. received meaningful academic benefits. (*Id*. at 16.) Plaintiff also raises issues with the Board's fact witness Lacatena, who was the principal of the District school D.V.W. attended. (*Id*. at 24.) Plaintiff argues Lacatena only observed D.V.W. in the classroom

7

on one occasion and therefore could not have known with too much specificity how D.V.W. was doing in the classroom. (*Id*.) Plaintiff further raises contentions with the testimony of D.V.W.'s support teacher, Shelley Molbogot, and D.V.W.'s sixth grade language arts teacher, Herman, whom Plaintiff contends was insufficiently trained in administering the Wilson Reading Program, a twelve-step sequential multi-sensory phonetic method of teaching students to read. (*Id*. at 26-30.) Finally, Plaintiff objects to the testimony of D.V.W.'s case manager, Freedman, whom Plaintiff argues was not knowledgeable about D.V.W. and prepared the inadequate IEP. (*Id*. at 30-33.) Therefore, Plaintiff argues that D.V.W. did not receive a FAPE while enrolled in the District. (*Id*. at 13-33.)

The ALJ determined that it was "clear from the record developed at hearing that D.V.[W.] made 'more than trivial' progress, albeit slowly, and that accordingly, the [District] program has delivered FAPE, and that its proposed program was reasonably calculated to continue to do so." (ALJ Decision at *17.) The ALJ therefore concluded that the District's "ongoing efforts to modify and individualize D.V.[W.]'s program so that it met his needs while permitting him to be included with typical peers was consistent with the requirement of the IDEA." (*Id*. at &18.) In arriving at her conclusions, the ALJ discussed the credibility of the various witnesses in detail. For example, the ALJ praised Herman as "an impressive witness" and apparently heavily relied on her testimony that D.V.W. experienced success and made demonstrable progress in her classroom. (*Id*. at *4-5.) She also credited the testimony of Freedman and Lacatena, who testified that D.V.W. was well-adjusted socially and made meaningful progress during his sixth grade school year. (*Id*. at *9.)

Whether the IEP a school district provides to a learning disabled student is appropriate is a question of fact. *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d at 564. This Court, therefore, must give due weight and deference to the ALJ's determination that the District provided D.V.W. with a

FAPE.  *See S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 269-70 (3d Cir. 2003).  Plaintiff's arguments that the ALJ erred in finding that D.V.W.'s IEP was appropriate is unavailing.  Much of her arguments are unsupported assertions.  Without more, i.e., specific citations to the record demonstrating that the ALJ's decision was erroneous, this Court cannot justifiably depart from the ALJ's conclusion on this issue.

Furthermore, while Plaintiff argues that various witnesses of the Board were not credible, she fails to advance objective non-testimonial evidence in support of her postulations.  The ALJ heard live testimony from witnesses over a period of nine days and specifically explained her credibility of assessments of the different witnesses.  Thus, this Court must accept the ALJ's credibility findings unless extrinsic evidence requires otherwise.  *See D.S. v. Bayonne Bd. of Educ.*, 602 F.3d at 564 (stating that "a District Court must accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion'") (citation omitted).  Plaintiff here failed to cite to any non-testimonial evidence justifying a rejection of the ALJ's credibility determinations.

This Court does note, however, that the ALJ credited virtually every one of the Board's witnesses while rejecting many of Plaintiff's witnesses.  For example, the ALJ lauded Herman as "an impressive witness" and found her much "more persuasive and credible" than Plaintiff's comparable witness.  (ALJ at *4, *7.)  The ALJ also found that "[t]he Board witnesses uniformly concurred that D.V.W. appeared happy and well adjusted during his sixth grade year."  (*Id*. at *9.)  Additionally, the ALJ overtly rejected Plaintiff's testimony regarding D.V.W.'s lack of progress in favor of the "more persuasive" Board witnesses who urged that he made progress while enrolled in the District.  (*Id*. at *10.)  The ALJ even rejected the testimony of the witnesses from Banyan who testified about D.V.W.'s progress in that school.  (*Id*. at *15.)  Furthermore, the ALJ afforded

9

"little weight" to Dr. Battaglia's opinion of D.V.W.'s experience in the District and found "his opinion of little usefulness." (*Id*. at *6, *12.) Although this Court is concerned by the fact that the ALJ credited nearly all of the District's witnesses but disbelieved many of Plaintiff's witnesses, especially her expert Dr. Battaglia, Plaintiff's failure to highlight contradictory extrinsic evidence requires this Court to accept the ALJ's credibility determinations. Accordingly, this Court defers to the ALJ's decision and affirms it.

Finally, this Court has considered Plaintiff's other arguments, namely that the ALJ exhibited favoritism toward the Board in presiding over pre-hearing discovery and that the ALJ made errors in her decision that render it moot, and finds them unpersuasive.

### B. Plaintiff's Motion to Supplement the Record

Plaintiff also moves to supplement the record on appeal. District courts, when reviewing a decision from a state administrative agency under IDEA, "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii) (2005). Yet, "the question of what additional evidence to admit in an IDEA judicial review proceeding. . .should be left to the discretion of the trial court." *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995). In determining the admissibility of additional evidence, district courts consider whether the proffered evidence is "relevant, non-cumulative and useful in determining whether Congress' goal has been reached for the child involved". *Id*. at 760. District courts must "be careful not to allow additional evidence that might change the character of the hearing from one of review to a trial *de novo*." *R.P. v. Ramsey Bd. of Educ.,* No. 06–CV–5788, 2008 WL 4371368, at *3 (D.N.J. Sept.17, 2008) (citing *Burlington v. Dep't of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984)).

Plaintiff seeks to supplement the record by including two documents that Plaintiff alleges were not available during the trial and which, Plaintiff argues, are critical to show the progress

D.V.W. made at Banyan. (Pl.'s Mot. to Supplement R. 1.) First, Plaintiff wants a January 2013 education assessment of D.V.W. included in the record, which she argues establishes the progress D.V.W. made at Banyan. (*Id.* at 2.) The second document is an undated letter from the Vice President & General Counsel for the Wilson Language Training Corporation that describes training and certification requirements of the Wilson Reading Program. Plaintiff argues this document should be included because it supports Plaintiff's argument that D.V.W. did not receive adequate Wilson Reading Program instruction until he was at Banyan. (*Id.* at 7-8.)

Evidence acquired after the development of an IEP "may be considered [by the district court] only with respect to the reasonableness of the [school] district's decision at the time it was made." *Susan N.*, 70 F.3d at 762; *see Fuhrmann v. East Hanover Bd. of Educ.*, 933 F.2d 1031, 1040 (3d Cir. 1993) (concluding that "evidence of a student's later educational progress may only be considered in determining whether the original IEP was reasonably calculated to afford some educational benefit.") Here, the education evaluation from January 2013—when D.V.W. was no longer enrolled in the District—does not establish that the District created a deficient IEP and thereby failed to provide D.V.W. with a FAPE. Instead, the evaluation simply supports the notion that D.V.W. did well at Banyan. Additionally, Third Circuit law is clear that the appropriateness of an IEP is not measured by a comparison between the instruction offered in the public school versus the education provided in the alternative school; rather, the public school's IEP must be designed to allow the disabled student to receive meaningful educational benefits. *See S.H v. State-Operated Sch. Dist.*, 336 F.3d at 271-72.

Second, the letter discussing the Wilson Reading Program could have been submitted at the due process hearing if Plaintiff believed the District's teachers were insufficiently qualified to teach the Wilson Reading Program. Indeed, Plaintiff's counsel cross-examined Herman, D.V.W.'s

11

language arts teacher who taught him using the Wilson Reading Program, with respect to her qualifications to teach it.  (Due Process Hearing Transcript, *C.P. o/b/o D.V. v. Fairlawn Board of Education*, No. 2012 17681, Jan. 17, 2012, 177-78.)  Plaintiff could have thereafter entered the subject letter to challenge Herman's qualifications but counsel failed to have done so. Accordingly, Plaintiff's motion to supplement the record is denied.

## IV.     CONCLUSION

For the reasons stated above, this Court affirms the ALJ's decision and **DENIES** Plaintiff's Summary Judgment Motion and also **DENIES** Plaintiff's Motion to Supplement the Record.


                                                             s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties